# PRINCE GEORGE'S COUNTY, MARYLAND *v.* DANIEL ERVEY

[No. 991, September Term, 1979.]

*Decided April 15, 1980.*

The cause was argued before MORTON, MELVIN and WEANT, JJ.

*Steven J. Gillman, Associate County Attorney for Prince George's County,* with whom were *Robert B. Ostrom, County Attorney, Michael O. Connaughton, Deputy County Attorney,* and *Robert J. Sheridan, Associate County Attorney,* on the brief, for appellant.

*Burt A. Leete,* with whom was *Samuel F. Ianni* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

The appellee, Daniel Ervey, filed suit against the appellant, Prince George's County, Maryland, to recover damages to his motorcycle resulting from an accident which

occurred on or about March 28, 1977. The suit, which was heard before the Circuit Court for Prince George's County on July 20, 1979, resulted in a finding in favor of the appellee and a judgment against the appellant in the amount of $2,100.00, with interest from date and costs. A final judgment was entered July 26, 1979 and a timely notice of appeal filed August 9, 1979.

The accident occurred on Muirkirk Road in Prince George's County while the appellee was driving eastbound on that road towards the Baltimore-Washington Parkway. Immediately after the appellee's motorcycle passed a sign indicating the end of county maintenance by Prince George's County and entered that portion of Muirkirk Road located east of said sign and maintained by the federal government through the National Park Service, it struck a hole and a piece of macadam causing the appellee to lose control and have the accident complained of. The National Park Police of the federal government reported to the scene of the accident and prepared the traffic accident report.[1] It is agreed that the ensuing damage to the motorcycle was in the amount of $2,100.00.

It was further agreed that Prince George's County had received a complaint in February, 1976 of the poor condition of the road east of the end of county maintenance sign, and that the county within days of its receipt had notified the National Park Service of the complaint. In response thereto the National Park Service informed the county that a resurfacing of that part of Muirkirk Road east of the end of county maintenance sign would begin in the next several months. From the time of the original complaint about the condition of the road through the time of the accident complained of, the county heard nothing more about the poor condition of Muirkirk Road. The part of the road maintained by Prince George's County was in good shape and according to stipulation did not contribute to the accident.

At the hearing on this matter the appellee was the only

---

1. Although according to the transcript this police accident report was introduced as Plaintiff's Exhibit #1, for the purpose of showing that the speed limit in the area of the accident was 25 miles per hour, the report was not to be found in the record.

witness. He testified that his speed at the time of the accident was about thirty-five miles an hour, and that the low beam light which he was using allowed him to see approximately fifty feet ahead. He also indicated that there were patches of fog, but that he "could see good."

On appeal the appellant challenges the court's finding "that the county had a duty to warn somebody of this road condition," and that the appellee was not negligent "so that his negligence was a cause and it would bar him from recovery in this case." In so doing the appellant raises the following questions:

> I. Does a county in the State of Maryland have a duty to warn travellers of rough conditions on federally controlled and maintained highways?

> II. Assuming such a duty [does] exist, did the county breach that duty?

> III. Assuming that there was a duty and a breach thereof, does the evidence establish that the breach was the proximate cause of the plaintiff's injury?

> IV. Does the undisputed evidence produced at the trial by the plaintiff establish that plaintiff/appellee was contributorily negligent in his use of the roadways to bar any recovery against the appellant/county?

## I.

The parties hereto have stipulated that Muirkirk Road east of the end of county maintenance sign was built by the federal government in the 1950's as part of the Baltimore-Washington Parkway project, and that since its construction it has been maintained by the federal government through the National Park Service. The part complained of has never been maintained by Prince George's County, nor has it ever been made part of the Prince George's County roads system for the purpose of maintenance. It was further stipulated that only that part of the Muirkirk Road west of the county maintenance sign was

maintained by Prince George's County. There were no warning signs posted by Prince George's County indicating the poor condition of the road east of the end of maintenance sign, although there was a large orange sign posted just beyond the county maintenance sign which indicated "something about Baltimore Washington Parkway under construction." This was apparently erected by the federal government.

It is conceded by the appellant that it has a duty to repair and maintain roads under its control, and that this duty may be discharged by the use of warning signs. However, it argues that "one cannot imply a duty to repair and maintain roadways over which the County has no control, and hence the question of adequacy of warnings does not arise unless the physical defect causing the injury is within the County's duty to repair." The appellee, on the other hand, contends that the duty to warn spreads into that part of Muirkirk Road which is located in the county but which is under the jurisdiction of the federal government for repair and maintenance, although we have been cited to no cases which so hold. As a matter of fact, we are not told by the appellee just how far into the eastern portion of Muirkirk Road Prince George's County's liability would extend, i.e., one foot, ten feet, a quarter of a mile, half a mile, a reasonable distance. In our view the appellee's proposal could only bring about a very impractical result.

In the case of *Godwin v. County Commissioners*, 256 Md. 326, 260 A.2d 295 (1970), the Court of Appeals considered the problem of a county's liability for the failure to keep a public road in St. Mary's County in good construction and repair. The road in question was one whose construction, reconstruction, and maintenance had been mandated to the State Roads Commission by the Legislature, leaving to the county the responsibility to make timely and seasonable recommendations to the State Roads Commission for reconstruction and correction of unsafe, defective, and dangerous conditions. In considering this matter, the Court said at page 349, 260 A.2d at 306:

The duty of the County Commissioners to repair

and maintain the county roads was removed from them and totally transferred to the State Roads Commission by the Acts of 1947, Ch. 560. Thereafter the County Commissioners had neither the power nor the means to repair and maintain those roads. *There then could be no liability because a duty and its breach must concur in order to have a cause of action.* . . . The mere obligation to recommend cannot place a duty on the County Commissioners to repair and maintain inasmuch as they had neither the power nor the means to repair and maintain, and the State Roads Commission was under no obligation to carry out any recommendation, in any event. [Emphasis added, citation omitted].

The court in the matter of *Gillespie v. City of Los Angeles,* 36 Cal. 2d 553, 225 P.2d 522 (1950), examined the contention that "even if a municipality is without power to correct a dangerous or defective condition, it is under a duty to warn of its existence or request those with the necessary authority to remedy it."[2] *Id.* at 556; 225 P.2d at 525. In considering this matter, the court found that the municipality was not liable to warn of unsafe conditions on the state's road, since it was the duty of the state to remedy such condition and maintain warning devices and not that of the city.

In *McNulty v. Pennsylvania,* 314 F. Supp. 1274 (E.D. Pa. 1970), the Commonwealth of Pennsylvania, Montgomery County, and Plymouth Township were sued for damages occasioned by a one car accident on Conshohocken Road in Plymouth Township, Montgomery County, Pennsylvania. The road in question was ordained to be maintained and constructed at the expense of the Commonwealth. The complainant alleged negligence on the part of the Commonwealth, Montgomery County, and Plymouth Township on the ground that they "failed to warn the public of dangerous conditions existing on the highway." *Id.* at

---

2. In the case *sub judice* such a request to remedy was made.

1275. The Court held that " 'since there must be a duty and breach of duty to produce a right of action' " Montgomery County and Plymouth Township could not be held liable for the alleged negligence. *Id.* (quoting *Stevens v. Reading Street Railway Co.,* 384 Pa. 390, 402, 121 A.2d 128, 134 (1956)). In so holding the court opined that it did not distinguish between the alleged negligence in failing to warn and the negligence in failing to inspect, maintain, or repair such road.

In this case we have a stipulation that separate and distinct sections of a given public road have separate and distinct public authorities responsible for their repair and maintenance. It is our opinion that as between those particular governmental entities liability for injuries resulting from defective portions of that road rests upon the one who is charged with the duty of maintenance and repair in the particular instance, and that there can be no actionable negligence against Prince George's County for whatever negligence may have been exhibited in the maintenance of that section of the road under the control of the federal government. Therefore, it follows that the trial court erred in holding that there was a duty on the part of Prince George's County to warn of existing hazardous conditions on that part of the road constructed and maintained by the federal government and the judgment in the case at hand must be reversed.[3]

## II, III, IV

Having thus concluded that a county in the State of Maryland has no duty to warn travellers of rough conditions on federally controlled and maintained highways, we do not find it necessary to consider questions II, III, and IV.

*Judgment reversed.*
*Costs to be paid by the appellee.*

---

**3.** Certainly the county took such steps as could have been reasonably expected, not grounded on duty, when it notified the federal government of the hazard, and that body agreed to correct same.